UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LIGHT CITY CHURCH                                   CIVIL ACTION

VERSUS                                              NO. 22-3130

NAUTILUS INSURANCE COMPANY                          SECTION M (2)

**ORDER & REASONS**

Before the Court are two motions *in limine* filed by defendant Nautilus Insurance Company ("Nautilus") seeking to exclude three of plaintiff's purported expert witnesses,[1] along with Nautilus's motion for partial summary judgment concerning plaintiff's claim for a full metal roof replacement and corresponding bad faith.[2] Plaintiff Light City Church ("Plaintiff") responds in opposition to all three motions,[3] and Nautilus replies in further support of its motions.[4] Also before the Court is Plaintiff's motion *in limine* to exclude Nautilus's purported expert Joe Balkan,[5] to which Nautilus responds in opposition,[6] and Plaintiff replies in further support of its motion.[7] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

**I.   BACKGROUND**

This is an insurance coverage dispute arising out of damage to Plaintiff's property allegedly sustained during Hurricane Ida, which made landfall on August 29, 2021.[8] At that time, Plaintiff's

---

[1] R. Docs. 23; 24.
[2] R. Doc. 25.
[3] R. Docs. 33; 37; 38.
[4] R. Docs. 41; 42; 43.
[5] R. Doc. 28.
[6] R. Doc. 36.
[7] R. Doc. 44.
[8] R. Doc. 1-4 at 4-10.

property was insured by Nautilus.[9] A church and offices occupy about one-third of the building, with the rest being warehouse space.[10] A metal roof of approximately 42,300 square feet was installed on the building in 2000 or 2001.[11] The policy provides coverage for direct physical loss or damage to the building with a policy limit of $600,000, and a named storm deductible of $19,500.[12] With respect to roof damage caused by wind or hail, the policy limits coverage to the actual cash value of the roof surfacing at the time of the loss or damage.[13] Further, the policy states that Nautilus –

> will not pay for cosmetic damage to roof surfacing caused by wind or hail. For the purpose of this endorsement, cosmetic damage means that wind or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements as it did before the cosmetic damage occurred.[14]

For the purposes of the roof endorsement, "roof surfacing" is defined as "the shingles, tiles, cladding, metal or synthetic sheeting or similar materials covering the roof and includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection, as well as roof flashing."[15]

Shortly after the storm, Plaintiff reported its loss to Nautilus.[16] Nautilus hired Phillips & Associates, Inc. ("Phillips") to inspect the property.[17] On September 30, 2021, a Phillips representative inspected the property and issued a report dated October 6, 2021, finding damages with a total replacement cost value of $66,980.98.[18] After subtracting the non-recoverable

---

[9] R. Doc. 26-1 at 1.
[10] *Id.* at 3.
[11] *Id.*
[12] R. Doc. 26-4 at 73-74.
[13] *Id.* at 106.
[14] *Id.*
[15] *Id.*
[16] R. Doc. 1-4 at 2.
[17] R. Doc. 26-13 at 1.
[18] *Id.* at 1-10.

depreciation and named-storm deductible, Plaintiff's net claim was valued at $28,935.40.[19] This estimate included replacement of 2,400 square feet of metal roofing in the southeast corner of the building.[20] Nautilus then hired a structural engineer with J.S. Held, LLC ("J.S. Held") to conduct a storm damage analysis.[21] Cal Bearman, P.E., inspected the property on October 18, 2021, and issued a report on November 10, 2021, finding that "high winds from Hurricane Ida led to the isolated roof failure at the southeast corner of the building."[22] Bearman also noted that there was pre-storm corrosion in that area that "weakened the connection and contributed to the failure." On January 26, 2022, Nautilus tendered $28,935.40 to Plaintiff.[23]

Plaintiff, believing that Nautilus's damage estimate was too low, hired counsel and an insurance adjustor, The Able Group.[24] On May 9, 2022, representatives of The Able Group, Marvin Dishman and Joshua Guidry, inspected the property and estimated the actual cash value of the damage to be $620,828.69, which included replacing 21,108 square feet of the roof.[25] On June 17, 2022, Plaintiff provided its adjustor's report to Nautilus, along with a demand for the damages documented therein.[26] On July 6, 2022, Nautilus confirmed receipt of the demand.[27]

On July 14, 2022, Plaintiff filed this suit against Nautilus in state court alleging breach-of-contract and bad-faith claims stemming from Nautilus's handling of Plaintiff's Hurricane Ida insurance claim.[28] Nautilus removed the suit to this Court, invoking diversity subject-matter jurisdiction.[29]

---

[19] *Id.* at 7.
[20] *Id.* at 2.
[21] R. Doc. 26-8.
[22] *Id.* at 1.
[23] R. Doc. 38 at 3.
[24] R. Docs. 1-4 at 5-6; 23-3.
[25] R. Doc. 23-3.
[26] R. Doc. 1-4 at 6.
[27] R. Doc. 38 at 4.
[28] R. Doc. 1-4 at 4-10.
[29] R. Doc. 1 at 1-6.

During the course of litigation, on February 27, 2023, Stephen Fleishmann, an employee of Titan Construction, L.L.C., inspected the property on Nautilus's behalf.[30] Fleishmann's March 21, 2023 report documented additional damages valued at $8,175.[31] Nautilus tendered that amount to Plaintiff on March 24, 2023.[32]

Around the same time, Plaintiff hired Childress Engineering Services to inspect the property. Randall Davis and Allen Kipp performed the inspection and prepared a report, and Tony Childress, a licensed professional engineer, reviewed and approved the report dated March 30, 2023.[33] They opined that "full replacement of the roof is necessary to ensure a watertight system and restore the roof to pre-storm condition" because it is difficult to replace specific panels and there was damage to panel fasteners that could allow water intrusion.[34] They also stated that the damaged structural components under the collapsed portion of the roof need to be repaired or replaced before new roof panels can be installed in that area, necessitating a full roof replacement in the area where the panels could not be salvageable.[35]

Nautilus now moves to exclude Plaintiff's purported expert insurance adjustors, Marvin Dishman and Joshua Guidry of The Able Group,[36] and Plaintiff's purported roofing expert, Keith Colson.[37] In a similar vein, Plaintiff seeks to exclude Joe Balkan, Nautilus's purported roofing expert.[38] And, Nautilus moves for partial summary judgment on Plaintiff's claim for a full metal roof replacement and corresponding bad faith.[39]

---

[30] R. Doc. 26-14.
[31] *Id.*
[32] R. Doc. 38-3.
[33] R. Doc. 26-9.
[34] *Id.* at 6.
[35] *Id.* at 7.
[36] R. Doc. 23.
[37] R. Doc. 24.
[38] R. Doc. 28.
[39] R. Doc. 25.

4

## II. LAW & ANALYSIS

### A. Motions *In Limine*

#### 1. Nautilus's motion *in limine* regarding Marvin Dishman, Joshua Guidry, and The Able Group

Nautilus seeks to exclude certain testimony and opinions of Plaintiff's insurance adjustors, Dishman, Guidry, and The Able Group, as failing to meet the disclosure requirements of Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.[40] On November 20, 2023, Plaintiff's counsel emailed to Nautilus's counsel Plaintiff's expert disclosures, which listed Dishman, Guidry, or other representatives of The Able Group as fact and expert witnesses "in property damage assessment and estimating," who "inspected Plaintiff's property, prepared a detailed estimate, secured photographs of the subject property and associated damages, and may generally have knowledge concerning Plaintiff's property damages caused by Hurricane Ida."[41] The disclosures further provide that these witnesses "may testify as to the items outlined in the report, estimate, photos, scope, pricing, and timeline of repairs, repairs, causation of damages, and physical observations of the property during inspection."[42] Nautilus argues that Plaintiff's November 20 disclosure is the first time Dishman was mentioned in the litigation and he should be prevented from testifying as an expert because there is "no indication, beyond counsel's representations, that Dishman inspected the property, created the estimate, or even reviewed these documents."[43] Nautilus also argues that Dishman, Guidry, or other representatives of The Able Group should be prevented from rendering causation opinions because Plaintiff did not produce a report containing any such opinions of these witnesses.[44]

---

[40] R. Doc. 23.
[41] R. Doc. 23-2.
[42] *Id.*
[43] R. Doc. 23-1 at 5 (emphasis omitted).
[44] *Id.* at 5-6.

In opposition, Plaintiff argues that it has informed Nautilus of Dishman's involvement in the claim at least four times: (1) Dishman's curriculum vitae was included in the documentation supporting Plaintiff's June 17, 2022 demand; (2) that same demand documentation was provided to counsel with Plaintiff's October 3, 2022 case management order disclosures; (3) Dishman was listed on Plaintiff's July 11, 2023 Rule 26 initial disclosures; and (4) Dishman was included in Plaintiff's November 20, 2023 expert disclosures, along with the report signed by both Dishman and Guidry.[45]  Plaintiff further argues that its expert disclosure of Dishman and Guidry complied with Rule 26(a)(2)(B) because it informs Nautilus of the opinions they will render regarding the scope and cost to repair the property damage said to be "caused" by Hurricane Ida, which occurred on August 29, 2021, the identified "date of loss."[46]  In the alternative, Plaintiff argues that Dishman and Guidry should be permitted to testify as experts in property damage assessment and estimating or at least as fact witnesses.[47]

Nautilus replies, reiterating that The Able Group witnesses should not be permitted to testify as to causation because such opinions are not stated in their report.[48]

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires a party to disclose the identity of any expert witness it may use at trial and generally must accompany this disclosure with a written report prepared and signed by the witness.  The report must contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B)(i).  An expert who fails to provide a report complying with Rule 26(a) should not be permitted to testify "unless such failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

---

[45] R. Doc. 33 at 1-6.
[46] *Id.* at 6-8.
[47] *Id.* at 8-10.
[48] R. Doc. 43.

Here, Plaintiff complied with Rule 26 in disclosing Dishman and Guidry as expert witnesses in property damage assessment and estimating. Beginning in June 2022, Plaintiff repeatedly informed Nautilus that both Dishman and Guidry were involved in producing The Able Group's estimate of the property damage. Nevertheless, The Able Group report does not provide specific opinions regarding causation. Accordingly, Dishman and Guidry may testify as experts in property damage assessment and estimating (to the extent that their testimony is not unnecessarily cumulative), but they may not render opinions regarding causation beyond stating that Plaintiff attributes the loss to Hurricane Ida.

**2. Nautilus's motion *in limine* regarding Keith Colson**

Nautilus seeks to exclude Colson from testifying at trial because his report and estimate were not produced timely, he is unqualified to testify as an engineering expert, and his report is unreliable due to inaccuracies concerning the roof gauge, insulation, and the inclusion of figures for commercial tax, overhead, and profit.[49] Plaintiff responds in opposition, arguing that the untimely production should be excused as nonprejudicial, it does not intend to offer Colson as an expert engineer, and the cited inaccuracies go to the weight, not the admissibility, of Colson's opinions.[50] Nautilus replies, reiterating that Colson's opinions are untimely, outside the area of his expertise, and unreliable.[51]

On June 28, 2023, this Court entered a scheduling order that set November 20, 2023, as Plaintiff's deadline to produce its expert disclosures pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, and Nautilus's reciprocal deadline as December 19, 2023.[52] The scheduling order informs the parties that "[t]he Court will not permit any witness, expert or fact,

---

[49] R. Doc. 24.
[50] R. Doc. 37.
[51] R. Doc. 42 at 1-5.
[52] R. Doc. 10 at 3.

to testify … unless there has been compliance with this Order as it pertains to the witness … without an order to do so issued on a motion for good cause shown."[53]  On November 20, Plaintiff produced to Nautilus its expert disclosures stating for the first time that it intended to offer Colson as a roofing expert.[54]  That same day, Plaintiff's counsel informed Nautilus's counsel that he was waiting on Colson's report and requested a 10-day extension.[55]  Nautilus's counsel responded that her client did not authorize an extension.[56]  Colson inspected the property on November 28, 2023.[57]  Plaintiff produced Colson's report and estimate on December 8, 2023, and December 17, 2023, respectively.[58]

    The timeline shows that Plaintiff timely disclosed Colson as a fact witness but failed to timely produce his Rule 26(a)(2)(B) expert report.  Although Plaintiff sought opposing counsel's consent for an extension, when it was not received, Plaintiff failed to file a motion to extend the deadline.  The scheduling order cautions that a witness not disclosed in compliance with the order will not be permitted to testify unless the Court allows it by order "issued on a motion for good cause shown."  There was no motion showing good cause for Plaintiff's tardy production of Colson's expert report and estimate, and consequently, the required order was not obtained.  Accordingly, Colson may not testify as an expert in any respect, but he may testify as a fact witness limited to his observations based on personal knowledge.  Nautilus's concerns with the substance of Colson's anticipated testimony (other than expert opinions, which are not permitted) can be addressed through cross-examination and contemporaneous objections.

---

[53] *Id.*
[54] R. Doc. 24-2 at 2.
[55] R. Doc. 24-3.
[56] R. Doc. 24-1 at 2.
[57] *Id.*
[58] *Id.* at 2-3.

8

### 3. Plaintiff's motion *in limine* regarding Joe Balkan

Plaintiff seeks to exclude Balkan's testimony from trial as untimely disclosed and cumulative.[59] Plaintiff argues that Nautilus's expert disclosures were due on December 19, 2023, but Balkan inspected the property on December 22, 2023, and his report and estimate were not provided to Plaintiff until January 8, 2024, and January 18, 2024, respectively.[60] Plaintiff also points out that Nautilus did not include Balkan on its witness list.[61] Plaintiff further argues that Balkan's testimony and opinions as a roofing expert would be cumulative because Nautilus has two expert engineers, Bearman and Fleishmann, who will testify about the building's roof.[62]

In opposition, Nautilus argues that it acted timely in disclosing Balkan as a rebuttal expert pursuant to Rule 26(a)(2)(D) of the Federal Rules of Civil Procedure.[63] Nautilus states that it hired Balkan to rebut Colson's report and estimate, which were themselves produced untimely on December 8, 2023, and December 17, 2023, respectively, and that it thus timely provided Balkan's report on January 8, 2024.[64] Nautilus admits that Balkan's estimate was produced late – 32 days after Colson's estimate – but submits that the two-day delay did not prejudice Plaintiff considering the intervening federal holiday and weather emergency that forced the closure of many offices and schools.[65]

Plaintiff replies, arguing that, because Balkan was hired to rebut Colson, if Colson is excluded from testifying at trial, Balkan should be as well.[66]

---

[59] R. Doc. 28.
[60] R. Doc. 28-1 at 1-2.
[61] *Id.* at 2.
[62] *Id.* at 3-4.
[63] R. Doc. 36 at 1-4.
[64] *Id.*
[65] *Id.*
[66] R. Doc. 44.

9

Rule 26(a)(2)(D)(ii) allows a party to produce expert "evidence [that] is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure."  This 30-day delay is built into the deadlines established in the Court's scheduling order.  Here, Nautilus produced Balkan's report to rebut Colson's tardy opinions within the 30-day window.  Further, considering the intervening federal holiday and severe weather, the two-day delay in producing Balkan's estimate is excusable and not prejudicial.  The question remains whether Balkan's expert testimony is necessary given the Court's exclusion of Colson's expert testimony.  Yet, because this question is not answered solely by the exclusion of Colson's expert testimony but must be evaluated in the context of the evidence presented at trial, the Court will address any objections based on this question, or the cumulation of testimony, as they arise at trial.  Accordingly, Plaintiff's motion to exclude Balkan is denied at this juncture.

**B. Nautilus's Motion for Partial Summary Judgment**

**1. Legal Standard**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*.  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue

10

of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v.*

*Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

   **2. Analysis**

Nautilus moves for partial summary judgment on Plaintiff's claim for a full roof replacement.[67] Nautilus argues that the undisputed evidence shows that only 2,400 square feet of the roof needs to be replaced and that Plaintiff has no expert evidence supporting its claim for a full roof replacement.[68] Nautilus contends that Childress, Plaintiff's expert engineer, testified at his deposition that he could not say that a full roof replacement is warranted and he could not determine what portions of the roof actually need replacing without additional testing.[69] Further, Nautilus argues that Davis, who inspected the building for Childress, identified only five areas of the roof that had non-superficial damage.[70] Thus, argues Nautilus, the majority of the roof damage is superficial and, consequently, excluded from coverage.[71] Nautilus also seeks dismissal of Plaintiff's bad-faith claims related to the roof replacement because it relied in good faith on expert reports and the policy language to dispute the extent of the damage and coverage.[72]

---

[67] R. Doc. 26.
[68] R. Doc. 26-1 at 1-8.
[69] *Id.* at 3-5, 11.
[70] *Id.* at 5-7, 11.
[71] *Id.* at 10-12.
[72] *Id.* at 12-14.

In opposition, Plaintiff argues that there are disputed issues of material fact concerning whether the entire roof needs to be replaced.[73] In support of its position, Plaintiff cites Childress's report where he states that a total roof replacement is necessary and his deposition testimony reiterating that opinion.[74] Plaintiff also cites Davis's deposition testimony to the same effect.[75] Further, Leonard Lucas, Jr., the pastor of Light City Church, testified that the roof was replaced in the early 2000s and did not leak until after Hurricane Ida.[76] In opposing dismissal of the bad-faith claims, Plaintiff points to evidence of Nautilus tendering undisputed amounts outside of the statutorily prescribed period and its undue delay in adjusting the claim after Plaintiff submitted substantial proofs of loss, and it also questions whether the cosmetic damage exclusion was arbitrarily applied.[77]

Nautilus replies, arguing that its motion seeks a ruling that the roofing surface endorsement excludes coverage for cosmetic damage, and that Plaintiff has failed to demonstrate that it is entitled to a full roof replacement because most of the roof sustained only cosmetic damage.[78] Nautilus further contends that Plaintiff's bad-faith claim associated with a full roof replacement must be dismissed because Nautilus has paid Plaintiff for the small portion of the roof that sustained covered damage.[79]

Considering the record before the Court, Nautilus has failed to sustain its summary-judgment burden of demonstrating that there are no disputed issues of material fact concerning

---

[73] R. Doc. 38. Within its opposition memorandum, Plaintiff suggests that the Court, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, should delay ruling on Nautilus's motion for partial summary judgment until after certain depositions are completed. *Id.* at 11-12. The Court declines Plaintiff's invitation to apply Rule 56(d) because denial of the motion is supported by the current record.
[74] *Id.* at 5-7, 13-15.
[75] *Id.* at 7, 15-16. Plaintiff likewise cites Colson's concurring opinion. *Id.* at 8, 16-17. However, the Court does not consider it because Colson may not testify as an expert.
[76] *Id.* at 8-9.
[77] *Id.* at 17-24.
[78] R. Doc. 41 at 1-3.
[79] *Id.* at 3-5.

13

whether the building needs an entire roof replacement, and the conflicting evidence on this score will need to be sifted by the factfinder at trial. Suffice it to say that what is cosmetic to Nautilus is damage Plaintiff insists prevents the entire roof from continuing to function as a barrier to entrance of the elements. As to Plaintiff's bad-faith claims, genuine issues of material fact remain with respect to the timely payment of undisputed amounts, and the timeliness and sufficiency of Nautilus's investigation and adjustment of the insurance claim. As a result, Nautilus's motion for partial summary judgment must be denied.

### III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Nautilus's motion *in limine* to exclude Dishman, Guidry, and The Able Group (R. Doc. 23) is DENIED with respect to entirely excluding Dishman, Guidry, and The Able Group. The motion is GRANTED to the extent of precluding these witnesses from rendering opinions on causation beyond stating that Plaintiff attributes the loss to Hurricane Ida.

IT IS FURTHER ORDERED that Nautilus's motion *in limine* to exclude Keith Colson (R. Doc. 24) is GRANTED with respect to excluding Colson as an expert witness. Colson will be permitted to testify as a fact witness.

IT IS FURTHER ORDERED that Plaintiff's motion *in limine* to exclude Joe Balkan (R. Doc. 28) is DENIED.

IT IS FURTHER ORDERED that Nautilus's motion for partial summary judgment on Plaintiff's claim for a full roof replacement and corresponding bad faith (R. Doc. 26) is DENIED.

New Orleans, Louisiana, this 8th day of February, 2024.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE